

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 29 2005

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

LARRY G. SALINAS, §
§
Plaintiff, §
§
v. § CIVIL ACTION NO.
§ 5:05-CV-056-C
§
JO ANNE B. BARNHART, §
Commissioner of Social Security, §
§
Defendant. §

## REPORT AND RECOMMENDATION

Plaintiff Larry G. Salinas seeks judicial review of a decision of the Commissioner of

Social Security denying his application for Disability Insurance Benefits (DIB). The United

States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States

Magistrate Judge for report and recommendation, proposed findings of fact and conclusions

of law, and a proposed judgment. After reviewing the administrative record and the

arguments of both parties, this court recommends that the District Court affirm the

Commissioner's decision.

**I.   Facts**

Salinas applied for DIB at the age of thirty-four years alleging that he was unable to

work because of lower back pain and burning in his legs. (Tr. 111-13, 145.) Administrative

Law Judge (ALJ) Herbert J. Green held a hearing on October 23, 2001, and issued a decision

on October 31, 2001, in which he determined that Salinas was not disabled. (Tr. 7, 332-53.)

The Appeals Council denied Salinas' request for review and Salinas filed a federal cause of action appealing the decision of non-disability.  On the Commissioner's motion, the District Court remanded Salinas' case for purposes of supplementing the record.  (Tr. 7.)

On remand the record was supplemented and Judge Green held another hearing and issued another decision finding again that Salinas was not disabled.  (Tr. 7, 354-66.) The Appeals Council denied Salinas' request for review and Judge Green's decision became the Commissioner's final decision in this case for purposes of judicial review.  20 C.F.R. § 404.981 (2005).

## II.   Discussion

In his first point of error Salinas contends that Judge Green did not apply the standard set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) in evaluating his mental impairments.

In determining that Salinas' mental impairments were not severe, Judge Green stated that Salinas' mental impairments did not have "more than a minimal effect" on Salinas' daily activities, social functioning, concentration, persistence or pace, and had not caused any episodes of decompensation, marginal adjustment, or impairments in areas of independent functioning. (Tr. 11.)  Salinas  contends that Judge Green applied his own standard rather than the standard in *Stone* because he considered whether there was a "slight restriction" in "activities of daily living" rather than determining whether there was a "slight abnormality

[having] such minimal effect . . . that it would not be expected to interfere with the individual's ability to work." *See id*. at 1101.

Salinas' argument must be rejected. First, Judge Green did not determine whether Salinas' mental impairments imposed a "slight restriction" on his "activities of daily living"; rather, as required under 20 C.F.R. § 404.1520a, the regulation under which a claimant's mental impairments must be evaluated, he considered the degree to which Salinas' mental impairments affected his daily activities, social functioning, concentration, and the other areas of functioning and determined that the limitations were "minimal." *See* 20 C.F.R. § 404.1520a(c),(d); *compare* Tr. 11.

Judge Green cited *Stone* in connection with his assessment of the severity of Salinas' mental impairments, (Tr. 11); thus, he indicated that he considered Salinas' mental impairments under the standard set forth in *Stone. Compare Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (remanding in part because the ALJ failed to reference *Stone* or cite the standard in *Stone* in assessing the severity of the claimant's mental impairments).

The opinion in *Stone* was rendered with the intent to prevent non-disability determinations made systematically at step two based on medical evidence alone without consideration of the degree in which the claimant's impairments interfered with the ability to work. *See Stone*, 752 F.2d at 1100-01,1106; *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). In this case, Judge Green considered the actual affects Salinas' mental impairments had on his functioning rather than considering the medical evidence alone and

3

proceeded to the fourth and fifth steps of the sequential disability evaluation process before

concluding that Salinas was not disabled; thus, there is no error in this case similar to that in

*Stone*. *See Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987).

Finally, the Fifth Circuit Court of Appeals has advised that *Stone* does not require

remand merely because the ALJ does not use "magic words"; rather, *Stone* requires that the

court ensure that the ALJ used the correct standard. *Hampton v. Bowen*, 785 F.2d 1308,

1311 (5th Cir. 1986). In this case, Judge Green considered the degree to which Salinas'

mental impairments imposed limitations. (Tr. 11.) Because the limitations were minimal, in

the absence of contrary evidence, it can be concluded that his mental impairments would

have a minimal limitation on his ability to do basic work activities.   20 C.F.R.

§ 404.1520a(d)(1).  This analysis is precisely the type of analysis required under *Stone*.

*Hampton*, 785 F.2d at 1311; *Stone*, 752 F.2d at 1101. Therefore, there was no error.

Salinas next contends that substantial evidence does not support Judge Green's

finding that his mental impairments are not severe and that Judge Green failed to consider

the combined effect of his impairments. He specifically contends that Judge Green did not

consider whether the combined effects of his mental and physical impairments were of

sufficient severity and that he did not take into account his diagnosis of major depressive

disorder.

These contentions must be rejected. Judge Green's determination that Salinas' mental

impairments were not severe is supported by substantial evidence. The medical records show

4

that Salinas' physicians prescribed antidepressants for him for a number of years. (Tr. 224, 259, 272.) In 2002 Salinas underwent psychotherapy sessions for pain management and his psychotherapist reported that there were no significant psychological issues that would hamper Salinas' prognosis for successful treatment with surgery or interventional treatment. (Tr. 266.)

Mahendra Upadhyaya, M.D., examined Salinas on March 3, 2004, at which time she diagnosed major depressive disorder, recurrent, with generalized anxiety disorder and panic attacks. (Tr. 326-27.) Dr. Upadhyaya noted that during the two and one-half to three months prior to her examination, Salinas had experienced an increasing degree of symptoms including irritability, feelings of sadness, anxiety, dejection, poor motivation, difficulty concentrating, and lack of interest in doing anything. (Tr. 326.) She noted that his mood was anxious, depressed, and irritable, and that his attention and concentration were impaired. (Tr. 327.) However, his thought processes were organized, his affect was appropriate, and he had fair insight and judgment. (*Id.*) Dr. Upadhyaya recommended adding another antidepressant to Salinas' treatment regimen in addition to relaxation techniques and interpersonal therapy. (*Id.*)

As Judge Green noted, Salinas' symptoms improved. (Tr. 11.) Approximately two weeks later, on March 17, 2004, Salinas reported an improvement in his symptoms and Dr. Upadhyaya noted an improvement in his mood and that his attention and concentration were improving. (Tr. 311.) Salinas reported that he felt better and thought that his wife and

5

children were happy with the improvement, that he had started to exercise some, and that he was taking his children to the park and for walks. (*Id.*) On July 12, 2004, Salinas reported good concentration and energy and that he was eating and sleeping well. (Tr. 328.) The diagnosis remained major depressive disorder with generalized anxiety and agitation but Dr. Upadhyaya's impression was that Salinas had "good control over his symptoms" although he continued to fluctuate. (*Id.*)

The improvement in Salinas' symptoms related to his depression and anxiety between March 2004, a few months after his symptoms were exacerbated, and the summer of 2004 demonstrates, as Judge Green found, that Salinas' mental impairments responded well to treatment and did not impose functional limitations that lasted for a sustained period of at least twelve consecutive months. (*See* Tr. 11, 13.) That Judge Green did not specifically note that Dr. Upadhyaya diagnosed Salinas with major depressive disorder is harmless error. Judge Green acknowledged that Salinas was diagnosed with depression and anxiety and considered the effects of these conditions. (Tr. 11.) A diagnosis alone does not establish that an impairment is severe or disabling. The ALJ must consider the extent of the limitations imposed by the impairment and the impact on the claimant's capacity for work. 20 C.F.R. § 404.1529(a), (c). This was done in this case.

Salinas' argument that Judge Green failed to consider the combination of his physical and mental impairments to determine whether they were of sufficient severity is without merit. The Commissioner's regulations require the ALJ to consider the combination of a

6

claimant's impairments without considering whether any of the claimant's individual impairments, if considered alone, would be of sufficient severity to be considered severe. 20 C.F.R. § 404.1523.   Whether the ALJ considers the claimant's impairments in combination to determine severity, therefore, is required when the ALJ finds that none of the claimant's individual impairments are severe. *See id.*  Considering the combination of impairments in a case in which none of the claimant's individual impairments are severe is critical because if the claimant's impairments are not severe, the Commissioner determines that the claimant's impairments do not significantly limit his ability to do basic work activities and the disability evaluation ends.  20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521(a). Judge Green determined that Salinas' degenerative disk disease was severe and proceeded to the third, fourth, and fifth steps of the disability evaluation process.  (Tr. 8, 11-14.)

Salinas' final argument concerns Judge Green's evaluation of evidence rendered by his treating physician, Kevin Funk, M.D.  Judge Green declined to accord controlling weight to an opinion written by Dr. Funk on an insurance form on which he indicated that Salinas could not lift more than ten pounds and could work only two to four hours per day. (Tr. 310.) Judge Green stated, "In February 2004, the claimant was apparently examined by a new physician (Dr. Funk) . . .."  (Tr. 10.)  Judge Green also noted that Dr. Funk referred Salinas to Dr. Upadhyaya and that he completed the insurance form in March 2004.

As Salinas points out, contrary to Judge Green's statement, Dr. Funk was not a new physician.  The records show that Dr. Funk was Salinas' treating physician in the second half

7

of 1999 and thereafter examined him on April 25, 2000, and on January 20, 2001. (Tr. 157-48.) Although Judge Green may have erred in referring to Dr. Funk as a "new physician," this error does not require remand.

It is questionable whether in 2004 Dr. Funk could be considered a "treating physician," 20 C.F.R. § 404.1502, because prior to the spring of 2004 Dr. Funk had not treated or examined Salinas since January 20, 2001. Nonetheless, Judge Green considered the regulatory factors under 20 C.F.R. § 404.1527(d) as is required of the ALJ when determining the weight to be accorded treating physician opinion. *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). In addition, he cited Social Security Ruling 96-2p, the Commissioner's interpretative ruling regarding treating source medical opinions. (Tr. 10.) Judge Green noted that Dr. Funk indicated that he was a pain specialist. He noted that there was no evidence in the record that would indicate what objective evidence Dr. Funk used to form his conclusions and further noted that treating records and objective records of other physicians in the record contradicted Dr. Funk's opinions. (*Id.*) Although Judge Green may not have acknowledged that Dr. Funk had treated and/or examined Salinas in 1999 and once in 2000 and once in 2001, he did note the nature and extent of the treating relationship after 2001; he noted that Salinas had "apparently" been examined by Dr. Funk in February 2004[1] and that Dr. Funk had completed the insurance form in March 2004.

---

[1]

Judge Green's implied question as to whether Salinas had been examined by Dr. Funk is a valid question because there are no medical records to show that Dr. Funk examined Salinas after January 20, 2001, or in connection with the opinion he rendered in March 2004. (*See* Tr. 310-12.)

8

Judge Green, therefore, considered the treating relationship between Salinas and Dr. Funk as it was relevant to determining the credibility of Dr. Funk's 2004 opinion, Dr. Funk's area of specialty, the length of the treating relationship after 2001, whether the opinion was supported by evidence, and whether it was consistent with the record as required under 20 C.F.R. § 404.1527(d). Thus, he evaluated Dr. Funk's opinion under the appropriate standard. *Newton*, 209 F.3d at 456.  In addition, contrary to Salinas' contentions, Judge Green was not required to re-contact Dr. Funk for clarification of his opinions unless there was insufficient evidence in the record for him to make a determination regarding disability. *Newton*, 209 F.3d at 458.  In this case, there was sufficient evidence in the record for Judge Green to make his determination.

Finally, substantial evidence supports Judge Green's determination that Salinas was not disabled. The evidence shows that Salinas has suffered from back problems since he was a teenager. (Tr. 163, 189.)  In May 1998 diagnostic testing showed that Salinas had low grade spondylolisthesis at disk L5-S1 and a bulging disk at L4-5.  (Tr. 189-90.)  Despite these problems, Salinas continued to work until August 1999.  (Tr. 132, 221.)  It is significant that Salinas worked despite his spondylolisthesis and a bulging disk because in 2001 and 2002, years in which Salinas alleged he was disabled and could no longer work, his condition was essentially unchanged from 1998; diagnostic testing showed that he had low grade spondylolisthesis at disk L5-S1 and a bulging disk at L4-5 with the addition of minor facet arthrosis at L4-5.  (Tr. 304.)

9

In addition, according to application documents and Salinas' testimony, in 2000 prior to the first hearing Salinas was the primary caregiver for his two year-old daughter. (Tr. 121.)  He indicated in application documents that pain medication eased his pain throughout the day and helped him get his chores done.  (*Id.*)  At that time he cooked breakfast and dinner, washed dishes, and took his daughter to the park and read and played games with her.  (*Id.*)   In 2003 he hurt his back moving furniture at his home.  (Tr. 359.) At the second hearing on December 7, 2004, he testified that he was the primary caregiver for his four year-old daughter and that he had cared for her by feeding her, dressing her, and bathing her since she was a newborn baby.  (Tr. 360.)  At the time of the hearing he was also responsible for picking up his oldest daughter from school and testified that he cooked for his youngest daughter, grocery shopped, was capable of walking "two to three, four blocks," and could lift a gallon of milk.  (Tr. 362-64.)

The foregoing evidence provides substantial evidence for Judge Green's ultimate finding of non-disability.  *See Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995); *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995).  The Commissioner's decision is granted great deference and will not be disturbed unless the court cannot find substantial evidence in the record to support the decision or finds that the Commissioner made an error of law.  *Leggett*, 67 F.3d at 564.  Because the Commissioner's decision in this case is supported by substantial evidence, it is conclusive and must be affirmed.  *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

## III.    Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Salinas' case with prejudice.

## IV.    Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: _____, 2005.


NANCY M. KOENIG
United States Magistrate Judge